# EXHIBIT 1

# CONFIDENTIAL SETTLEMENT AND RELEASE AGREEMENT

This Confidential Settlement and Release Agreement ("***Agreement***") is made between Plaintiff Julie Glover ("***Plaintiff***") and Carvana, LLC ("***Defendant***"). Defendant and Plaintiff may be referred to collectively as the "***Parties***."

WHEREAS, Plaintiff filed a case against Defendant, on September 29, 2022, alleging violations of the overtime and recordkeeping requirements of the Fair Labor Standards Act as well as failure to timely pay wage requirements of Arizona's wage payment statutes, A.R.S. § 23-350 *et seq.*, which was assigned Case No. 2:22-cv-01667-MHB and then reassigned to Case No. CV-22-1667-PHX-DGC in the United States District Court for the District of Arizona, based on work she alleged to have performed as an employee of Defendant ("***Case***");

WHEREAS, Plaintiff alleged in the Case that Defendant failed to pay Plaintiff for certain hours worked;

WHEREAS, Defendant contends it properly paid Plaintiff for all hours worked;

WHEREAS, the Parties engaged in good faith, arm's length settlement negotiations of Plaintiff's claims in the Case;

WHEREAS, following the good faith, arm's length negotiations, the Parties wish to: (i) settle and compromise all their disputes, claims, and differences, whether known or unknown, asserted or unasserted, and (ii) provide for dismissal with prejudice of Plaintiff's individual claims the Case following the Court's approval of the settlement.

NOW, THEREFORE, in consideration of the mutual promises set forth below, and other good and valuable consideration, the receipt and sufficiency of which hereby is acknowledged, the Parties agree as follows:

## TERMS

1.  <u>Effective Date</u>.  This Agreement shall become effective on the date Plaintiff and Defendant have both signed this Agreement ("***Effective Date***").

2.  <u>Settlement Payment:</u> Defendant agrees to pay FIFTEEN THOUSAND FIVE HUNDRED and 00/100 DOLLARS ($15,500.00) (the "***Gross Settlement Amount***"), which includes full compensation of Plaintiff's alleged unpaid wages, including any alleged overtime wages, liquidated damages, and attorneys' fees and costs, to be disbursed to Plaintiff and her counsel according to the allocation below:

    a.  Check 1:  Thirteen Thousand and 00/100 Dollars ($13,000.00), made payable to "Yen Pilch Robaina & Kresin, PLC" representing Plaintiff's attorneys' fees and costs for which a 1099 will be issued.

    b.  Check 2:  The gross amount of Two Thousand Five Hundred and 00/100 Dollars ($2,500.00), representing Plaintiff's alleged unpaid wages, for which applicable and

1

customary employee payroll tax withholdings will be deducted, made payable to Plaintiff "Julie Glover," for which a W-2 Form will be issued.

Prior to payment, Plaintiff will move for the District Court's approval of the Agreement and Defendant will represent that it is unopposed. Defendant will not oppose Plaintiff's request for attorneys' fees and costs to be submitted as part of the unopposed motion for approval of the settlement. In the event the District Court denies the Plaintiff's unopposed request to approve the settlement, the Parties will agree to negotiate in good faith to address any concerns the Court has with respect to approving the settlement in an effort to resolve the case. If the Court approves the settlement, Defendant will deliver the checks comprising the Gross Settlement Amount within fourteen (14) days after the District Court enters its order approving the settlement.

   3. <u>Released Parties and Released Claims</u>.

    a. Except for claims to enforce this Agreement, Plaintiff voluntarily, knowingly, and intentionally releases and discharges Defendant, its parents, predecessors, successors, assigns, subsidiaries, affiliates, joint employers, and insurers, and each of their past, present and future directors, officers, shareholders, members, employees, agents, insurers and attorneys both individually and in their capacities as directors, officers, shareholders, members, employees, agents, insurers and attorneys (a "**Released Party**" or collectively the "**Released Parties**") from any and all claims, actions, liabilities, demands, rights, damages, costs, expenses, and attorneys' fees, known and unknown, asserted or unasserted, which Plaintiff has or may have against the Released Parties as of the date of execution of this Agreement, including, without limitation, any alleged violation of:

- The Fair Labor Standards Act;
- The Family and Medical Leave Act;
- Title VII of the Civil Rights Act of 1964;
- Sections 1981 through 1988 of Title 42 of the United States Code;
- The Employee Retirement Income Security Act of 1974 ("ERISA") (except for any vested benefits under any tax qualified benefit plan);
- The Immigration Reform and Control Act;
- The Americans with Disabilities Act of 1990, as amended;
- The Genetic Information Nondiscrimination Act of 2008;
- The Age Discrimination in Employment Act of 1967 ("ADEA");
- The Older Workers Benefit Protection Act ("OWBPA");
- The Equal Pay Act;
- The Workers Adjustment and Retraining Notification Act;
- The Fair Credit Reporting Act;
- The Uniformed Services Employment and Reemployment Rights Act of 1994;
- The National Labor Relations Act;
- The Arizona Civil Rights Act;

2

- The Arizona Employment Protection Act
- The Arizona Minimum Wage Act;
- The Arizona Medical Marijuana Act;
- Any other federal, state or local law, rule, regulation, or ordinance and the common law;
- Any claim for failure to hire, retaliation, promissory estoppel, violation of public policy, infliction of mental or emotional distress, loss of consortium, invasion of privacy, false light, fraud, fraud in the inducement, negligence, intentional tort, breach of express or implied contract, or defamation; and/or;
- Any basis for recovering costs, fees, or other expenses including attorneys' fees incurred in these matters.

b. Plaintiff acknowledges that Defendant's promises to make the above payments and any other consideration provided by Defendant in this Agreement shall be in full and final settlement of any claims for relief or damages Plaintiff may have, or may claim to have, against the Released Parties as of the date of execution of this Agreement. Plaintiff agrees that the Settlement Sum is valuable consideration for any amount to which she may be entitled for any claims she has or may have against the Released Parties as of the date of execution of this Agreement.

c. Plaintiff further acknowledges that this General Release extends also to claims that exist as of the date of execution of this Agreement that she does not know or suspect to exist in her favor at the time she executes this Agreement, which, if known by her, might have materially affected her decision to execute this Agreement. Plaintiff knowingly and voluntarily waives and relinquishes all rights, relief, and benefits that she has or may have under applicable law with respect to such claims. This Release shall be construed as broadly as permitted by law.

d. Claims Not Released. Plaintiff is not waiving any rights she may have to: (a) benefits and/or the right to seek benefits under applicable workers' compensation and/or unemployment compensation statutes; (b) pursue claims which by law cannot be waived by signing this Agreement; (c) enforce this Agreement; and/or (d) challenge the validity of this Agreement.

e. Nothing in this Agreement prevents Plaintiff from filing a charge or complaint with or from participating in an investigation or proceeding conducted by the Equal Employment Opportunity Commission, National Labor Relations Board, the Securities and Exchange Commission, or any other any federal, state or local agency charged with the enforcement of any laws, including providing documents or any other information, or limits Plaintiff from exercising rights under Section 7 of the NLRA to engage in protected, concerted activity with other employees, although by signing this Agreement Plaintiff is waiving rights to individual relief (including backpay, front pay, reinstatement or other legal or equitable relief) related to matters released herein in any charge, complaint, or lawsuit or other proceeding brought by Plaintiff or on Plaintiff's behalf by any third party, except for any right Plaintiff may have to receive a payment from a government agency (and not the Company) for information provided to the government agency. Plaintiff and Defendant further agree that Plaintiff may provide information pursuant to any valid subpoena, provided that Plaintiff first notifies

3

Defendant's counsel, Kimberly Dennis, at kdennis@littler.com, in writing of the proposed disclosure in order to provide Defendant a reasonable opportunity to seek a Protective Order.

4. <u>Release of Age Claims.</u> Plaintiff understands and agrees that she is knowingly and voluntarily entering into this Agreement with the purpose of releasing and waiving any claims she may have against the Released Parties that arise under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq* or relevant state law. Plaintiff agrees that her release is knowing and voluntary and conforms to the provisions of the Older Workers Benefits Protection Act. Plaintiff specifically acknowledges and agrees that:

a. This release is part of an Agreement between Plaintiff and Defendant that is written in a manner calculated to be understood by Plaintiff;

b. Plaintiff specifically releases and waives any rights or claims against the Released Parties arising under the ADEA;

c. Plaintiff does not release any claims that may arise after the date this Agreement is executed;

d. The rights Plaintiff is releasing and waiving in this Agreement are in exchange for consideration in addition to anything of value to which she is already entitled;

e. Plaintiff is hereby advised in writing to consult with an attorney prior to executing this Agreement, and has in fact done so;

f. Plaintiff has been given a period of twenty-one (21) days within which to consider the release of her age-related claims described in paragraph four (4) of this Agreement; however, if Plaintiff voluntarily executes this Agreement prior to the expiration of the 21st day, she will have voluntarily waived the remainder of the 21-day consideration period. Any changes to this Agreement once it has been presented to Plaintiff will not restart the 21-day consideration period; and

g. Plaintiff may revoke the release of her age-related claims described in paragraph four (4) of this Agreement within seven (7) calendar days following her execution of this Agreement, and this Agreement is not effective or enforceable until at a minimum this 7-day revocation period has expired. Such revocation, to be valid, must be in writing and addressed and delivered by Overnight U.S. Mail to the attention of David B. Jordan, Littler Mendelson, P.C., 1301 McKinney Street, Suite 1900, Houston, TX 77010-3031, before the 7-day revocation period expires. Plaintiff acknowledges and agrees that should she revoke this Agreement within the 7-day revocation period, the Company shall have no obligation to provide her with any of the benefits under this Agreement, including, but not limited to the payments set forth in Paragraph 3 above.

5. <u>Taxes.</u> Plaintiff acknowledges and agrees that neither Defendant nor its attorneys have made any representations regarding the tax consequences, if any, of any amounts received by Plaintiff or her attorneys pursuant to this Agreement. Plaintiff agrees to pay her share of all federal, state, and local taxes, if any, that are required by law to be paid by her with respect to the amounts paid under this Agreement. Plaintiff agrees to indemnify, defend, and hold harmless Defendant from any claims, demands, deficiencies, assessments, executions, judgments, or recoveries by any

4

governmental entity against Defendant for Plaintiff's share of any amounts claimed due with respect to payments made pursuant to this Agreement or pursuant to claims made under any federal or state or local tax laws.

      6.    <u>No Admission of Liability</u>.  The Parties agree this Agreement and nothing it contains, and no action taken by Defendant with regard to the Agreement shall be construed as, an admission of liability by Defendant for any purpose whatsoever, which is expressly denied.

      7.    <u>Dismissal</u>.  Plaintiff will move for the District Court's approval of the Agreement and Defendant will represent that it is unopposed. Once approved, Defendant will file a Stipulation to Dismiss with Prejudice of Plaintiff's individual claims within 7 days of the District Court's Order approving the Agreement, with each side to bear their own costs and fees except as otherwise outlined in this Agreement.

      8.    <u>Warranties</u>.  Plaintiff warrants and represents as follows:

      a.    Plaintiff has read this Agreement and agrees to the conditions and obligations set forth in it;

      b.    Plaintiff has had reasonable time to consider the terms of this Agreement and has had the opportunity to discuss it with Plaintiff's Counsel;

      c.    Plaintiff voluntarily executes this Agreement after having had full opportunity to consult with legal counsel and without being pressured or influenced by any statement or representation of any person acting on behalf of the Released Parties;

      d.    Plaintiff has not relied on any representation, either express or implied, either by statement or omission, by the Released Parties or their agents in deciding to enter into this Agreement;

      e.    Plaintiff has full and complete legal capacity to enter into this Agreement;

      f.    Plaintiff is not aware of any other claims, actions, cases, or lawsuits Plaintiff has filed, opted into, or currently has pending against any of the Released Parties other than those described in this Agreement;

      g.    As of the date of this Agreement, Plaintiff has not assigned Plaintiff's rights under this Agreement; and

      h.    Plaintiff admits, acknowledges, and agrees upon receipt of the Gross Settlement Payment that Plaintiff has received payment for all wages, compensation, bonuses, commissions, liquidated damages, paid time off, or other benefits from Defendant and the Released Parties that are or could be due to Plaintiff for any reason whatsoever for claims existing at the time of execution of the Agreement, including those from the time period of Plaintiff's employment with Defendant.

9.      Assignment.  No assignment of the rights or obligations in this Agreement will be permitted unless it is in writing and signed by the Parties. This Agreement shall be binding upon, and inure to the benefit of, the Parties' successors or assigns.

10.     Entire Agreement. This Agreement constitutes the complete understanding between the Parties concerning its subject matter. This Agreement supersedes and replaces all other agreements, contracts, statements, representations, or understandings between or among the Parties, whether written or verbal.  The Parties acknowledge there have been no promises or representations concerning the subject matter of this Agreement other than those set forth in this Agreement.  This Agreement cannot be altered, amended, or modified in any respect, except by a writing duly executed by the Parties.

11.     Covenant Not To Sue.  Plaintiff represents that other than the Lawsuit she has not filed or assigned to others the right to file, nor are there currently pending, any complaints or charges against any of the Released Parties with any court, judicial or administrative entity. By signing this Agreement, Plaintiff further agrees that she will not initiate a charge or commence any other legal proceeding, or make any further claims, against the Released Parties at any time for actions taken up to and including the date she executes this Agreement, except that either party may institute an action to enforce any term or terms of this Agreement. Plaintiff understands and agrees that, if any class or other action is brought by a third party with regard to the claims released in this Agreement, Plaintiff will not accept any payments or monetary relief relating to any such claims or causes of action.

12.     Confidentiality. Plaintiff agrees to keep the terms and existence of this Agreement, including the amount of the Gross Settlement Amount, confidential to the fullest extent permitted under applicable law, except as to Plaintiff's spouse, financial advisor or tax advisor, and attorney, and to seek court approval of the settlement as outlined in the Agreement.  If asked about the outcome of the Case, Plaintiff will respond that the matter "has been resolved." This confidentiality provision is a material term of this Agreement.

13.     Non-Disparagement. Plaintiff agrees that she will not make statements (written or oral) that are in any way disparaging towards Defendant, and those current and former employees, vendors or customers of Defendant that Plaintiff has knowledge of.  Defendants agree to take steps necessary to ensure that Faith Peterson, Lauren Sheley, Nicole Delabarre, and Daniel Espinoza do not make statements (written or oral) that are in any way disparaging towards Plaintiff.  This provision does not prohibit Plaintiff, or those individuals identified in the preceding sentence, from fully and candidly participating in an investigation or other proceedings before a governmental agency.

14.     No Rehire. Plaintiff agrees that she will not be re-employed by Defendant or any of its parents, subsidiaries, or affiliates in the future. Plaintiff acknowledges and agrees that she will not knowingly seek reinstatement or knowingly seek or accept future employment from Defendant or any of its parents, subsidiaries, or affiliates. Plaintiff further agrees that she will not knowingly accept assignment with Defendant or any of its parents, subsidiaries, or affiliates as an independent contractor, subcontractor, or consultant (or through any contract service, agency, or registry).  Plaintiff agrees that Defendant, including its parents, subsidiaries, and affiliates have no obligation to employ or otherwise engage Plaintiff and may refuse to do so without any recourse.

Plaintiff further acknowledges and agrees that, if she does seek or obtain such employment or engagement after the date of execution of this Agreement, Plaintiff's employment or engagement may be terminated, without notice or cause; Plaintiff agrees not to contest such termination. However, this Agreement may not be used to terminate an existing employment relationship between Plaintiff and an unrelated entity which may in the future merge with, acquire, be acquired, or become affiliated with Defendant, any related entity of Defendant, or any Employer entity under common ownership or control of Defendant. Defendant agrees to provide a neutral reference to any of Plaintiff's prospective employers, providing only dates of employment and job title; Plaintiff should direct prospective employers to The Work Number at www.theworknumber.com or 800-367-5690.

15.     **Settlement of Bona Fide Dispute Over FLSA and State Wage and Hour Claims**. Plaintiff and Defendant agree the Gross Settlement Payment constitutes, *inter alia*, consideration to settle a bona fide dispute between the Parties as to Defendant's liability, as well as the amount of hours Plaintiff worked and the compensation, if any, due to Plaintiff, and consistent with the Court's approval of the settlement amount and apportionment, the Parties believe this is a fair, adequate, and reasonable settlement of the Case. As such, this Agreement constitutes a full release of Plaintiff's claims for unpaid regular and overtime wages and any and all other relief under the FLSA, the Arizona Wage Payment Statute, A.R.S. § 23-350 *et seq.* and any other applicable state or local wage and hour laws.

16.     **Cooperation**.  The Parties and their respective counsel agree to cooperate fully with each other to accomplish the terms of this Settlement, including but not limited to, execution of such documents and such other actions as may reasonably be necessary to implement the terms of this Settlement.  The Parties shall use their best efforts, including all efforts contemplated by this Settlement and any other efforts that may become necessary by order of the District Court, or otherwise, to effectuate the terms of this Settlement.

17.     **Severability**.  If any provision of this Agreement is held illegal, invalid, or unenforceable, such holding shall not affect any other provision hereof.  In the event any provision is held illegal, invalid, or unenforceable, such provision shall be limited so as to give effect to the intent of the Parties to the fullest extent permitted by applicable law.

18.     **Interpretation**.  This Agreement was negotiated and drafted at arms-length between counsel for the Parties, and, therefore, any rules requiring terms be interpreted against the drafter shall not apply.  The term "Section" shall refer to the enumerated paragraphs of this Agreement. The headings contained in this Agreement are for convenience of reference only and are not intended to limit the scope or affect the interpretation of any provision of this Agreement.

19.     **Venue and Applicable Law**.  This Agreement shall be interpreted and construed in accordance with the laws of the State of Arizona, without regard to its conflicts of law provisions. Any enforcement action in connection with this Agreement shall be in accordance with the Mutual Arbitration Agreement between the Parties.

20.     **Counterparts and Facsimiles**.  This Agreement can be signed in counterparts, which, taken together, will constitute the entire agreement.  Facsimile, .jpeg, and electronic signatures with hash data will be treated as original signatures.

[signature pages to follow]

IN WITNESS WHEREOF, the Parties have executed this Confidential Settlement and Release Agreement on the dates written below.

**PLAINTIFF JULIE GLOVER:**

*Julie Glover* (DocuSigned)

Julie Glover

Date: 1/24/2023

**CARVANA, LLC:**

*Adrienne Sanford*

By: Adrienne Sanford

As: VP, People Operations

Date: 1/26/2023

9